Robert Tauler (SBN 241964)
Matthew J. Smith (SBN 240353)
Tauler Smith LLP
8605 Santa Monica Boulevard, #86963
Los Angeles, California 90069-4109
Tel: (310) 590-3927
rtauler@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>BBE SUPPLEMENTS, KEVIN DIXON, an individual, CHARLES DIXON, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.** '17CV582 BAS NLS<br><br>**COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT § 42 (a)(1)(B))**<br><br>**[DEMAND FOR A JURY TRIAL]** |

Plaintiff Nutrition Distribution, LLC, d.b.a. Athletic Xtreme ("Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendants BBE Supplements, ("BBE"), Kevin Dixon, an individual, and Charles Dixon, an individual (collectively together with BBE, "Defendant"), and in support thereof, avers as follows:

## INTRODUCTION

1. This is a civil action arising out of BBE's false and misleading advertising regarding certain products (collectively, the "Prohormone Products") containing anabolic-androgenic steroid chemicals such as, without limitation, Dimethazine (also known as "DMZ" and "Dymethazine") and Methylstenbolone (also known as "Methyl Sten," "M-Sten" and "Ultradrol") (collectively, the "Illicit Steroids").

2. Published, peer-reviewed clinical studies have repeatedly shown prolonged consumption of the Illicit Steroids to expose humans to extreme health risks including, without limitation, hepatotoxicity (i.e., liver damage), cholestasis (i.e., bile blockage), acute renal failure, hypogonadism (i.e., decreased function or failure of sexual organs), gynecomastia (i.e., development of breasts in men), and infertility.

3. Despite these severe health risks, Defendant markets its various Prohormone Products as "prohormone" performance enhancers to body builders, gym users, fitness enthusiasts and athletes, promising these consumers numerous purported physical benefits without mentioning, and in some cases expressly denying, the overwhelming clinical evidence that such products pose extreme health risks.

4. It is these severe health risks that have led the Federal government to classify most anabolic-androgenic steroids, including the Illicit Steroids, as "controlled substances" under the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) (the "CSA"), thereby criminalizing the manufacture, distribution and dispensation of such chemicals.

5. In addition, many national and international sports agencies have expressly banned Dimethazine and Methasterone from competition.

6. Although Defendant knows or should know that its Prohormone Products are dangerous, illegal and banned by sports agencies, Defendant's marketing and advertising with respect to such products often suggests the exact opposite. Accordingly, Defendant has knowingly and materially participated in a false and misleading advertising campaign to promote and sell its Prohormone Products. Defendant's continuing false, misleading, illegal and deceptive practices have violated the Lanham Act and have unjustly enriched Defendant at the expense of Plaintiff, a legitimate sport supplement manufacture, and have caused Plaintiff extensive and irreparable harm, including but not limited to, loss of revenue, disparagement and loss of goodwill.

7. Among other things, this action seeks to enjoin Defendant from the manufacture, marketing and sale of any and all products containing any Illicit Steroids or any other anabolic-androgenic steroids, including without limitation, the Prohormone Products, as Defendant is illegally and falsely marketing such products in violation of the Lanham Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

9. This Court has personal jurisdiction over BBE because Defendant has, directly or through its intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold and advertised its nutritional supplement products in the United States, the State of California and this district, including but not limited to, the Prohormone Products and/or other products containing the Illicit Steroids. Defendant has purposefully and voluntarily

placed these products into the stream of commerce with the expectation that they will be purchased in this district.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

**PARTIES**

11. Plaintiff Nutrition Distribution, LLC, d.b.a. Athletic Xtreme, is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

12. Defendant BBE Supplements is, on information and belief, a fictitious business name used by Defendants Kevin and Charles Dixon to operate the www.bbesupplements.com website (the "Website") to manufacture, market and sell into interstate commerce the Prohormone Products. BBE's Website lists 5501 Tanglebriar Drive, Dickinson, Texas 77539 as BBE's business address.

13. Defendant Kevin Dixon is, on information and belief, an owner and/or operator of BBE Supplements.

14. Defendant Charles Dixon is, on information and belief, an owner and/or operator of BBE Supplements.

15. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

**FACTUAL ALLEGATIONS**

16. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for illegal activity, including unfair competition prohibited by the Lanham Act.

**Plaintiff Nutrition Distribution & Mass FX Black**

17. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

18. Plaintiff has offerings in several categories of body building products, including pre-workouts, muscle-gainers, fat burners and male performance enhancement.

19. Plaintiff has invested substantial time and capital in the research and development of its product in the muscle-gainer sub-market of the nutritional supplement world, Mass FX Black. Specifically, Plaintiff designed and markets Mass FX Black to provide consumers more aerobic power, greater muscular endurance and faster recovery. Defendant claims that consumption of the Prohormone Products results in these very same effects.

**The Illicit Steroids**

20. Products containing chemicals described as "prohormones" are, like Mass FX Black, marketed to fitness enthusiasts and bodybuilders as muscle-gainers and athletic performance enhancers.

21. However, the vast majority of products described as "prohormones" in the health and fitness marketplace, including the Illicit Steroids, have very similar physiological effects in the human body to anabolic-androgenic steroids once ingested. Such "prohormones" are often touted by fitness supplement manufactures and retailers as

providing the same physical benefits as anabolic-androgenic steroids, but without the dangerous side effects known to be associated with such chemicals.

22. However, published, peer-reviewed clinical studies have repeatedly shown such mislabeled "prohormones," including the Illicit Steroids, to be unsafe for human consumption. For example, medical experts have found consumption of the Illicit Steroids to cause hepatotoxicity (i.e., liver damage), cholestasis (i.e., bile blockage), acute renal failure, hypogonadism (i.e., decreased function or failure of sexual organs), gynecomastia (i.e., development of breasts in men), and infertility. While some of these conditions may be reversible in cases of short-term consumption, more aggressive use has been shown to result in permanent organ damage. Thus, although even modest consumption of any Illicit Steroid poses serious health risks, these risks are often greatly amplified in individuals who, because they are misled as to the side effects of such substances and do not benefit from the advice of experts, consume an Illicit Steroid for an extended period and/or in significant amounts.

23. It is these severe health risks that have led the Federal government to classify most of the chemicals sold as "prohormones," including the Illicit Steroids, as "controlled substances" under the CSA, thereby criminalizing the manufacture, distribution and dispensation of such chemicals. Under Section 841 of the CSA, it is illegal (except as otherwise specifically authorized) for any person to knowingly manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense, a "controlled substance." The CSA's definition of "controlled substance" includes both those anabolic steroids specifically scheduled pursuant to the CSA and those steroids that, even if not specifically set forth in the CSA's definition of "anabolic steroid," (i) are derived from, or have a chemical structure substantially similar to, a chemical otherwise qualifying as an "anabolic steroid" under the CSA, and (ii) have been created or manufactured with the intent of promoting muscle growth or otherwise having pharmacological effects similar to those of testosterone and/or have been marketed so as

to suggest that such chemicals may have such effects. (See Section 802(41)(C) of the CSA.)

24. Dimethazine is nothing more than two bound Methasterone (a.k.a. "Superdrol") molecules which separate upon human ingestion, and accordingly, it is a "controlled substance" under the Act because it is (a) derived from, and structurally similar to, Methasterone, a chemical already set forth as a Schedule III controlled anabolic steroid under the CSA, and (b) often touted by sellers (including by BBE) as promoting muscle growth.

25. Methylstenbolone is a "controlled substance" under Section 802(41)(C) of the CSA because it is (a) the 17α-methylated derivative of Stenbolone, a chemical already defined under Section 802(41)(A)(xiv) of the CSA as a controlled anabolic steroid, and (b) often touted by sellers (including by BBE) as promoting muscle growth.

26. Accordingly, under Section 841 of the CSA, the manufacture, distribution and dispensation, and the possession with intent to manufacture, distribute or dispense, of Dimethazine and Methylstenbolone is illegal.[1]

27. In addition, many national and international sports agencies, including without limitation, the World Natural Body Building Federation and the North American Natural Body Building Federation, have expressly banned Dimethazine and Methasterone from competition. Moreover, because Dimethazine and Methasterone convert when ingested to Methasterone and Stenbolone, respectively, consuming these chemicals will lead to disqualification from any competition using the World Anti-Doping Agency's standards.

[1] While the U.S. Food and Drug Administration may have primary jurisdiction regarding the legality of the sale of certain dietary ingredients or food additives, whether or not the sale of Illicit Steroids, such as Dimethazine, Methasterone, Methylstenbolone and Stenbolone, is legal is unambiguously the purview of the CSA and the Attorney General of the United States. As a result of the Attorney General causing Methasterone and Stenbolone to be scheduled as controlled substances, Dimethazine and Methylstenbolone likewise became controlled substances under the catchall language of Section 802(41)(C) of the CSA.

**Defendant BBE And Its Prohormone Products**

28. Defendant is a nutritional supplement company based, on information and belief, in Texas who directly competes with Plaintiff in the fitness supplement marketplace.

29. Defendant manufactures, distributes and sells the Prohormone Products through its Website and various other on-line retail marketplaces.

30. On its Website and through various other promotional materials, BBE touts the numerous purported health and physical benefits of its Prohormone Products. For example and without limitation, Defendant represents to consumers that its Dymethazine product by Mitfix RX is "a strong compound that will give you huge gains in size, strength and muscle fullness." Defendant claims that its Winswole product by Medfit RX containing Methylstenbolone "provides increases in mass, size, and strength" and "[u]nlike superdrol, Methylstenbolone retains little to no water retention meaning you can bulk up without losing definition." Generally, Defendant specifically markets its various Prohormone Products as "dietary supplements" to body builders, gym users, fitness enthusiasts and athletes, promising these consumers many of the purported fitness benefits of anabolic-androgenic steroids while downplaying, and sometimes omitting, that these chemicals pose serious health dangers, are illegal and have been banned by many national and international sports agencies.

31. This false and disingenuous marketing of its Prohormone Products gives consumers a false sense of security regarding the safety of the Prohormone Products. In reality, BBE and its executives have known all along about the dangers associated with their Prohormone Products and the Illicit Steroids, in general.

32. Defendant's false advertising is harmful to the marketplace for dietary and nutritional supplements, as well as to the health of individual consumers. Defendant has created an illegitimate marketplace of young bodybuilders who will gain muscle at all costs, but who are not informed of the dangers of Defendant's Prohormone Products.

Users of such products have little incentive to use a natural product like Mass FX Black until they are hurt or the Prohormone Products are taken off the shelves.

**CLAIM FOR RELIEF**

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

33. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

34. Defendant has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its Prohormone Products by, without limitation, commercially marketing and mislabeling such products by downplaying or by not mentioning (i) the overwhelming clinical evidence that such products pose extreme health risks, (ii) the illegality of the manufacture and sale of the Prohormone Products, and (iii) the fact that the Illicit Steroids have been banned by national and international sports agencies.

35. The use of such falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers, including those in this district, into believing that they are purchasing a product with different characteristics.

36. This deception is material because (i) it is likely to influence a consumer's purchasing decision, especially if the consumer is concerned about the health consequences of taking anabolic-androgenic steroids or other "controlled substances," and (ii) such decision could lead to dangerous and unanticipated health consequences for such consumers.

37. Defendant has introduced its false and misleading statements into interstate commerce via marketing and advertising on certain websites and shipment of its products into interstate commerce.

38. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to BBE and the loss of

goodwill in Plaintiff's products. Indeed, BBE's conduct is a black eye on the industry as a whole and has the tendency to disparage Plaintiff's products and goodwill.

39. Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising and promotion, misrepresent the nature, characteristics and qualities of Defendant's products in violation of Section 43(a)(1)(B) of the Lanham Act.

## PRAYER

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendant as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant from producing, licensing, marketing and selling any product containing any Illicit Steroids, including, without limitation, the Prohormone Products;
2. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;
3. For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;
4. For restitution of Defendant's ill-gotten gains;
5. For treble damages in accordance with 15 U.S.C. § 1117;
6. For punitive damages;
7. For costs and attorneys' fees; and
8. Any other relief the Court may deem appropriate.

DATED: March 23, 2017 TAULER SMITH LLP

By: ___*/s/ Robert Tauler*_______________
Robert Tauler
NUTRITION DISTRIBUTION LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: March 23, 2017 TAULER SMITH LLP

By: ___*/s/ Robert Tauler* ________________
Robert Tauler
NUTRITION DISTRIBUTION LLC